JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
JOANNE LLOYD-BRAGG

## DEFENDANTS
AXIS INSURANCE COMPANY and AXIS SPECIALTY U.S. SERVICES, INC.

**(b)** County of Residence of First Listed Plaintiff   Union
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Fulton
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Katherine C. Oeltjen, Esquire
Console Mattiacci Law, LLC
110 Marter Avenue, Suite 502  Moorestown, NJ 08057  856-854-4000

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original Proceeding

☐ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from Another District *(specify)*

☐ 6  Multidistrict Litigation - Transfer

☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
42 U.S.C. §2000e, et seq. ("Title VII"); 29 U.S.C. §621, et seq. ("ADEA"); N.J.S.A. 10:5-1, et seq. ("NJLAD")
Brief description of cause:
Plaintiff brings claims against her current employer for discrimination and retaliation.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
in excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE
07/09/2020

SIGNATURE OF ATTORNEY OF RECORD
/s/ Katherine C. Oeltjen

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **JOANNE LLOYD-BRAGG**<br>**Summit, NJ 07901** | : | **CIVIL ACTION NO.** |
| | : | |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **AXIS INSURANCE COMPANY**<br>**11680 Great Oaks Way,**<br>**Suite 500**<br>**Alpharetta, Georgia 20022** | : | |
| | : | |
| | : | |
| **and** | : | |
| **AXIS SPECIALTY U.S. SERVICES,**<br>**INC.**<br>**11680 Great Oaks Way,**<br>**Suite 500**<br>**Alpharetta, Georgia 20022** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT

### I.   INTRODUCTION

Plaintiff, Joanne Lloyd Bragg ("Plaintiff") is a fifty-five (55) year old, highly accomplished, insurance executive with decades of experience in the industry. She has worked for Defendants Axis Insurance Company and Axis Specialty U.S. Services, Inc. (collectively, "Defendants") for nearly seventeen (17) years, garnering exemplary performance reviews and appraisals and managing all aspects of large segments of Defendants' claims business. The Defendants' routinely recognized her strong performance by increasing her portfolio of responsibility and entrusting her with complex decision-making involving millions of dollars in Defendants' assets. Yet, Defendants did not pay Plaintiff equally for her work when

compared to male employees at equal or higher rank than Plaintiff within the organization. Plaintiff learned that important aspects of her compensation were less than male employees performing substantially similar or lessor levels of work on behalf of Defendants. At the same time, Plaintiff's scope of work was consistently greater than male employees given higher ranks within Defendants' organization. When Plaintiff complained of sex discrimination in connection with her pay and rank to Michael Baumel ("Baumel"), Chief Claims Officer and Elizabeth Neumann ("Neumann"),  Head of Liability Claims Professional Lines, she was retaliated against, including by way of Defendants' failure to promote her to a position promised to her before she complained  and by removal of substantial aspects of her portfolio. At the hands of Baumel and Neumann, she was subjected to hostile treatment, including, without limitation, isolation from senior leaders within Defendants' organization, micromanagement, ongoing removal of certain job responsibilities; removal from the Claims Sr. Leadership group, and, an unwarranted negative performance review.

All of the foregoing took place against the backdrop of Defendants' prioritizing the advancement of younger, less experienced employees and efforts by Defendants' to require that "dinosaurs" make way for the next generation of more technologically savvy insurance executives. Plaintiff observed Defendants' "push out" or diminish several of her colleagues in their fifties, many with exemplary performance records, and replaced them with substantially younger, less experienced employees. As detailed below, Defendants have prioritized the hiring, retention and promotion of Neumann who is substantially younger and less experienced than Plaintiff at Plaintiff's expense.

2

Plaintiff now brings claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. ("Title VII"), the Age Discrimination in Employment Act, as amended, 29 U.S.C. §621, et seq. ("ADEA"), and the New Jersey Law Against Discrimination, as amended, N.J.S.A. 10:5-1, et seq. ("NJLAD").   Plaintiff seeks damages, including economic loss, compensatory, liquidated and punitive damages, costs and attorney's fees and all other relief that this Court deems appropriate.

## II.   **PARTIES**

1.      Plaintiff, Joanne Lloyd-Bragg is an individual and a citizen of the State of New Jersey. She resides in Summit, New Jersey 07901.

2.      Plaintiff is fifty-five (55) years old.

3.      Plaintiff is female.

4.      Defendant Axis Insurance Company is organized under the laws of Illinois with a principal place of business located at 11680 Great Oaks Way, Suite 500, Alpharetta, Georgia 30022.

5.      Defendant Axis Specialty U.S. Services, Inc. is organized under the laws of Delaware with a principal place of business located at 11680 Great Oaks Way, Suite 500, Alpharetta, Georgia 30022.

6.      Defendants Axis Insurance Company and Axis Specialty U.S. Services, Inc. are wholly owned subsidiaries of Axis Capital Holdings Ltd. ("Axis Capital"), a Bermuda registered holding company.

7.      Axis Capital is a publicly traded entity, trading under the symbol AXS on the New York Stock Exchange.

8.      Defendants are engaged in an industry affecting interstate commerce and regularly do business in the state of New Jersey.

9.      At all times material hereto, Defendants maintained a business location at 300 Connell Drive, Suite 8000, Berkley Heights, New Jersey 07922.

10.     At all times material hereto, Plaintiff worked out of Defendants' offices located at 300 Connell Drive, Suite 8000, Berkley Heights, New Jersey 07922.

11.     At all times material hereto, Defendants employed twenty (20) or more employees.

12.     At all times material hereto, Defendants acted by and through authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of their business.

13.     At all times material hereto, Defendants were employers within the meaning of the statutes which forms the basis of this matter.

14.     At all times material hereto, Plaintiff was an employee of Defendants within the meaning of the statutes which forms the basis of this matter.

III.   **JURISDICTION AND VENUE**

15.     The causes of action which form the basis of this matter arise under Title VII, the ADEA, and the NJLAD.

16.     The District Court has jurisdiction over Counts I (Title VII), and II (ADEA) pursuant to 28 U.S.C. §1331.

17.     The District Court has jurisdiction over all Counts pursuant to 28 U.S.C. §1332 since the amount in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000), exclusive of interests and costs, and as there is diversity of citizenship as

Plaintiff is a citizen of New Jersey and Defendants are citizens of Illinois and Delaware, respectively.

18.     On or about December 13, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination alleged herein.  Attached hereto and incorporated herein and marked as Exhibit "1" is a true and correct copy of the EEOC Charge of Discrimination (with personal identifying information redacted).

19.     On or about, April 2, 2020, Plaintiff filed a Second Charge of Discrimination with the EEOC, complaining of the acts of discrimination alleged herein. Attached hereto and incorporated herein and marked as Exhibit "2" is a true and correct copy of the Second EEOC Charge of Discrimination (with personal identifying information redacted).

20.     Plaintiff's Charge and Second Charge were open complaints with the EEOC simultaneously and a reasonable investigation of Plaintiff's Charge would have uncovered evidence related to Plaintiff's Second Charge.

21.     On or about June 29, 2020, the EEOC issued to Plaintiff a Dismissal and Notice of Rights for Plaintiff's EEOC Charge.  Attached hereto and marked as Exhibit "3" is a true and correct copy of that notice (with personal identifying information redacted).

22.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.   <u>FACTUAL ALLEGATIONS</u>

23.     Plaintiff was hired by Defendants in or about September 2003 as a Senior Claims Specialist.

24.     Defendants operate under the umbrella of Axis Capital Holdings Ltd and offer a variety of insurance and reinsurance products to end customers within the United States.

25.     Amid her exemplary performance, Plaintiff was promoted in or about January, 2006 to EPL & Private D&O Claims Manager which placed her at a rank of Assistant Vice President within Defendants' organization ("AVP").

26.     As AVP, Plaintiff had three direct reports and reported to Tracy Forsyth ("Forsyth") (female).

27.     Shortly after Plaintiff was promoted, Defendants hired two additional AVPs, both male: Robert Beilaus ("Beilaus") and Harold Neher ("Neher").

28.     Beilaus had the same number of direct reports as Plaintiff; Neher did not have any direct reports.

29.     In or about the summer of 2008, Forsyth recommended Plaintiff for promotion to EPL, Private D & O & Fidelity Claims Manager which would place Plaintiff at a rank of Vice President "1" within Defendants' organization ("VP1").

30.     Before Plaintiff's promotion was effectuated, Forsyth left her position as Plaintiff's manager and was replaced by Fred Zauderer ("Zauderer") (male).

31.     After reminding Zauderer of Forsyth's recommendation that she be promoted, Plaintiff was promoted to VP 1 in or about January, 2009. At the same time, Zauderer promoted Beilaus.

32.     Shortly after Plaintiff and Beilaus were promoted, Neher, who by that time only had one (1) direct report, was also promoted to VP1.

33.     During the time that he managed Plaintiff, Zauderer made several comments that Plaintiff understood to indicate his bias against professional women, including telling Plaintiff that she should not attend work related events such as mediations that her male colleagues would routinely attend because "what if [her] daughter needed her?" Zauderer also tried to take work away from Plaintiff, against her wishes, amid his belief that she shouldn't travel or attend large volumes of meetings so that she could be with her daughter.

34.     Plaintiff never heard Zauderer make any comments to her male peers about the amount of time they spent with their children or express any concern that their children might need them during a work event.

35.     Between 2010 and 2014 Plaintiff learned that Beilaus and Neher were being compensated more than Plaintiff by way of equity grants even though Plaintiff had equal or greater responsibilities within the Defendants' organization.

36.     Plaintiff did not receive any equity grants during the same time period. At the same time, Plaintiff's performance as VP1 was praised and she routinely received positive performance reviews.

37.     In or about 2013, Plaintiff asked Zauderer why Beilaus and Neher were paid more than she was by way of grants of equity.

38.     Zauderer responded by stating the he had "no idea" how or by whom equity was awarded to employees.

39.     Shortly thereafter, also in or about 2013, Zauderer removed the Fidelity unit from Plaintiff and reassigned it to Neher. In reassigning the unit to Neher, Zauderer also promoted Neher to a rank of Vice President 2 ("VP2") within Defendants' organization.

40.     In removing the Fidelity unit from Plaintiff, Zauderer told her she did a good job managing the unit but that Neher "needed more."

41.     Plaintiff understood that Neher's career development was more important to Zauderer than her own career development.

42.     In or about 2014, Plaintiff again asked Zauderer why she was not being granted equity while her male comparators were being granted equity.

43.     Zauderer didn't provide Plaintiff any explanation for why she was not receiving equity in parity with her peers.

44.     Plaintiff then asked Dave Hayward ("Hayward") (male), then Head of Claims for Defendants, why she was not receiving equity while her male comparators were receiving equity. Hayward responded that he would "look into it." During the same conversation, Plaintiff asked Hayward about being promoted to VP2 and what, if anything, further she needed to accomplish in order to be promoted.

45.     Hayward never provided Plaintiff with any information or explanation as to why she was not receiving equity or what, if anything, further was required of her in order to be promoted.

46.     The conduct described herein took place against the backdrop of Defendants' engaging in a pattern and practice of prioritizing the retention and promotion of younger employees at the expense of older employers. For example, and without limitation, since at least in or about 2015:

        i. Defendants, including by way of its highest-ranking "talent" officer, publicly engaged in efforts to attract, retain and appeal to "millennial"

employees, including by publicly stating that the next generation of Axis should be "modern, sexy, digital and purposeful";

ii.   On or about December 8, 2017, Albert Benchimol ("Benchimol"), CEO of Defendants' parent company, Axis Capital Holdings, made public comments to over four hundred insurance and reinsurance executives in which he stated that in order to effectuate what he believed to be necessary technology driven developments in the industry, the "dinosaurs" of the business would have to allow a "younger" workforce to drive those changes; and,

iii.   Plaintiff observed Defendants "push out" several, older, high ranking employees, many with strong performance records, including without limitation: Liza Manzer; Julie Capoote; Laura LaMaine; Rohit Trivedi; and, Trish McIntire.

47.   In or about May 2015, Defendants hired Michael Baumel ("Baumel") (male), to replace the substantially older former head of US Claims, John Intondi ("Intondi").

48.   Plaintiff understands that Intondi, who was in his sixties (60s) was pushed out of the organization.

49.   With Baumel in place as the new Head of US Claims, Defendants' then took steps to diminish and marginalize the substantially older Zauderer (then age seventy-one).

50.   Defendants' efforts to diminish Zauderer included, without limitation, hiring a senior level employee, Elizabeth Neumann ("Neumann") to "report" to him without allowing

Zauderer to meet with her during the interview process or have any involvement in the decision to hire her.

51.     By 2017, Zauderer was given a new title, Head of Complex Claims, that belied his diminished areas of responsibility. Despite his diminished role, Zauderer retained a rank of Senior Vice President ("SVP") within the organization.

52.     All of Zauderer's approximately twenty-one (21) direct reports were removed and reassigned.

53.     Plaintiff began to report directly to Baumel.

54.     Around the same time, in or about late 2016 or early 2017, Plaintiff asked Baumel about being promoted to VP2 and provided information to Baumel evidencing that her duties and number of direct reports were comparable to Neher's and greater than two other male, VP2s reporting to Baumel: Bob Lystad ("Lystad") (male) and Steve Lejuski ("Lejuski") (male).

55.     Baumel did not provide any meaningful feedback or response to Plaintiff.

56.     Baumel only told Plaintiff that VP2s "only" received a 5% greater bonus and so it "wasn't a big deal."

57.     In or about late, 2017, Neher expressed to Plaintiff concerns that he was being pushed out because of his age. Neher shared details with Plaintiff about his compensation, leading Plaintiff to further understand the substantial gap in compensation between her and her male peers, including Neher.

58.     In or about February, 2018, Plaintiff was promoted to VP2 and placed in charge of over fifty percent (50%) of Defendants' Professional Lines Claims Departments across three offices.

59.     Plaintiff's responsibilities were greater or equal to Neher's, and greater than other male VP2s.

60.     At or around the same time, Neher was terminated.

61.     As VP2, Plaintiff had substantially greater responsibilities and duties than Neher had at his termination, yet Defendants did not pay her equally, granting her a raise upon promotion that left her well short of what other male VP2s with substantially lesser duties were paid.

62.     With her promotion to VP2 and her position over more than half of the organization's Professional Lines Claims Departments, the scope of Plaintiff's job at least equaled Zauderer's who retained a higher rank.

63.     On or about April 12, 2019 Zauderer told Plaintiff that his base salary was $250,000, his bonus target was fifty percent (50%) and his equity target was $160,000.

64.     Zauderer, with his diminished portfolio of responsibility, was paid substantially more than Plaintiff was for less work.

65.     On the same day, Plaintiff complained to Baumel that a male comparator was being paid substantially more than she was being paid.

66.     Baumel responded, in part, by saying he would pass my concern along to human resources.

67.     On or about April 16, 2019, Plaintiff complained to Laura Botaro ("Botaro"), Senior Human Resources Representative, of sex discrimination in connection with her pay and promotional opportunities.

68.     On or about April 24, 2019, during meeting with Baumel with Botaro appearing by telephone, Plaintiff provided further details regarding the years of sex-based pay inequity she had

been subjected to as well as the Defendants' pattern of refusing to promote her while assigning her work in scope and demand equal to male employees often one rank, or more, ahead of her.

69.     Baumel told Plaintiff it would not be "fiscally responsible" to promote her to Senior Vice President and otherwise failed to address any of the information and evidence that Plaintiff provided regarding discrimination in connection with her pay and promotion.

70.     Shortly thereafter, in or about June, 2019, Baumel told Plaintiff that Defendants were creating a new position "Head of Professional Lines."

71.     Baumel encouraged Plaintiff to apply, but gave her short notice by which to do so.

72.     Plaintiff applied and was interviewed for the Head of Professional Lines position.

73.     In or about early July, 2019 Baumel told Plaintiff she did not receive the Head of Professional Lines position.

74.     Instead, Neumann, who is approximately ten years younger, substantially less experienced than Plaintiff and who has not complained of sex discrimination, received the position.

75.     Neumann was substantially less qualified than Plaintiff for the position and had only been employed by the Defendants for approximately four (4) years.

76.     The only reason given by Defendants for Plaintiff not receiving the position was that she did not receive as many "votes" from the interview panel as Neumann did.

77.     In or about August, 2019, Plaintiff began reporting to Neumann.

78.     In no longer reporting to Baumel, Plaintiff was effectively demoted.

79.     In September, 2019 Baumel and Neumann told Plaintiff she would be promoted to a newly created Deputy Head of Professional Lines position. Baumel later shared that the announcement of Plaintiff's promotion would be made during the week of September 29, 2019.

80.     On or about September 27, 2019 during a car ride back from a business trip to Newport, Rhode Island, Neumann told Plaintiff that the promotion would not come with any increase in salary.

81.     Plaintiff complained to Neumann of sex discrimination and detailed for her the years of discrimination she had been subjected to in connection with her pay and promotional opportunities.

82.     On or about October 2, 2019, Neumann told Plaintiff that she had shared Plaintiff's September 27th complaint of sex discrimination with Baumel and Botaro. During the same conversation, Neumann also: (1) accused Plaintiff of "going around" and asking people what they made; and, (2) instructed Plaintiff to "take what is given."

83.     Neuman also asked Plaintiff if her complaints of sex discrimination were an issue she "still wanted to pursue."

84.     When Plaintiff told Neumann that she did wish to "pursue" her sex discrimination complaints, Neumann told Plaintiff that Defendants were "reconsidering" promoting her to the Deputy Head of Professional Lines. At the same time, Neumann told Plaintiff that Defendants were removing a high-profile investment line, Private D&O, from her management.

85.      Plaintiff had successfully managed the Private D&O unit for approximately fourteen (14) years and had played an instrumental role in the unit's success.

86.     On or about October 4, 2019, Plaintiff spoke with Neumann to ask that Neumann promote her as promised by Baumel the prior month.

87.     Neumann responded by saying, for the first time, that Plaintiff might not be the "right" person for the role.

88.     After her conversation with Neumann, Plaintiff attempted to share her concerns with Baumel by telephone who delayed in getting back to Plaintiff and then was dismissive of her complaints.

89.     On or about October 31, 2019, Plaintiff met with Maggie Bliss ("Bliss"), Human Resources representative of Defendants and complained of sex discrimination in connection with pay and promotion opportunities.

90.     Plaintiff also complained that she was being retaliated against for her complaints of sex discrimination and shared the details of the conversation with Neumann in which Neumann made it clear to Plaintiff that she would not receive the Deputy position unless she abandoned her complaints.

91.     Bliss required Plaintiff to participate in a November 5, 2019 meeting with Neumann in which Neumann called Plaintiff "emotional" and reiterated that Defendants were seriously reconsidering promoting Plaintiff. Neumann further stated that even if Defendants did decide to "promote" Plaintiff, they would take away a substantial number of her duties.

92.     Following the meeting, Plaintiff sent an email to Bliss in which she again complained of sex discrimination and retaliation and provided details related to her complaints.

93.     In response, on or about November 6, 2019, while generally dismissing Plaintiff's concerns, Bliss told Plaintiff that Defendants had hired an outside law firm to "investigate" only the pay equity aspects of Plaintiff's complaints.

94.     Bliss made it clear that Defendants would not investigate Plaintiff's complaints of retaliation for complaining of sex discrimination.

95.     At or around the same time, Neumann told Plaintiff she would not be promoted.

96.     The only reason given is that the company, despite earlier assurances to the contrary, had decided not to "approve" the position.

97.     Defendants' stated reason for not promoting her to the Deputy position is pretextual.

98.     Neumann also told Plaintiff that certain of her job responsibilities and several direct reports were being removed from her management and being given to a substantially younger, non-complaining, male employee, Ari Magedoff ("Magedoff") (40 years old).

99.     Magedoff was substantially less qualified than Plaintiff.

100.    On or about November 22, 2019, during a phone call with Halima Horton White, Esquire, of the Employment Law Solution firm, Plaintiff provided extensive information about the sex discriminatory and retaliatory treatment she had been subjected to, including in connection with a sex-based hostile work environment, pay inequity, and multiple failures to promote.

101.    Horton White was dismissive of the information shared by Plaintiff.

102.    In or about early December, 2019, Defendants excluded Plaintiff from a team trip to Kansas City to attend the team Christmas Party.

103.    On or about December 13, 2019, Plaintiff filed a Charge of Discrimination with the EEOC asserting claims under Title VII, the EPA, the ADEA and the NJLAD.

104.    Also on December 13, 2019, Plaintiff sent a courtesy copy of the Charge of Discrimination via email to Baumel, Bliss, and Conrad Brooks ("Brooks"), Defendants' General Counsel.

105.    On or about December 18, 2019, Magedoff's promotion to Head of Management Liability and his assumption of Plaintiff's unit was publicly announced.

106.    On or about December 23, 2019, Plaintiff sent a copy of her Charge of Discrimination to Horton.

107.    During the week of January 17, 2020, Defendants prevented Plaintiff from hiring her selected candidate for a Claims Manager position. Instead, Defendants forced Plaintiff to hire a substantially younger, less qualified candidate for the position.

108.    The candidate of Plaintiff's choice was an older worker.

109.    Before Plaintiff complained of sex and age discrimination and retaliation for complaining of sex and age discrimination, Plaintiff was allowed to hire her own staff and Defendants deferred to Plaintiff's candidate selection.

110.    On January 17, 2020, Plaintiff sent an email to Bliss and Neuman stating that she was continuing to be subjected to retaliatory conduct by Defendants for complaining of discrimination. Plaintiff wrote, in part, "I believe my control over my team is being usurped. The way the process is being handled is diminishing my role even further and I consider it more retaliation for my having complained of gender and age discrimination."

111.    Plaintiff also wrote, "By pushing to impose the less qualified but younger candidate for the position instead of a staff member with experience and passion for the lines of business, AXIS is engaging in further age discrimination."

112.    On or about March 2, 2020, Defendants gave Plaintiff a lesser performance review than she had in recent years and awarded her a diminished bonus and equity.

113.    In addition to the conduct detailed above,  following her complaints of discrimination and retaliation, Baumel and Neumann also subjected Plaintiff to a hostile work environment in the following ways, without limitation: by micromanaging her performance;

16

subjecting her to unwarranted criticism; removing aspects of her areas of responsibilities that she performed well and dispersing them to non-complaining and substantially younger, often male employees; isolating her from team functions; removing her from the Sr. Claims Leadership team; refusing to place her in a meaningful role on Defendants' diversity and inclusion team despite her relevant work experience in that area; undermining her with her direct reports; "working around" her by going directly to her subordinates in matters that she would typically be involved; and, instructing her not to communicate directly to Baumel by email or phone, but to go through Neumann instead.

114. On or about March 6, 2020, amid her doctor's advice and as the hostile work environment to which she was subjected intensified, Plaintiff required a medical leave of absence from work as a result of the stress and anxiety caused by the discrimination to which she was subjected, including in connection with a hostile work environment.

115. Defendants' have not provided a legitimate, non-discriminatory reason for the discriminatory and retaliatory conduct to which Plaintiff has been subjected including in connection with the pay inequity she was subject to, Plaintiff's demotion, Defendants' failures to promote Plaintiff; and, a hostile work environment.

116. The Defendants stated reasons, when provided, are pretextual.

117. Plaintiff's sex was a motivating and/or determinative factor in connection with Defendants' discriminatory and retaliatory treatment of Plaintiff.

118. Plaintiff's age was a motivating and/or determinative factor in connection with Defendants' discriminatory and retaliatory treatment of Plaintiff.

119.    Plaintiff's complaining of discrimination and retaliation was a motivating and/or determinative factor in Defendants' discriminatory and retaliatory treatment of Plaintiff.

120.    Defendants failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

121.    The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining about discrimination.

122.    The discriminatory and retaliatory conduct of Defendants, as alleged herein, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

123.    At all times material hereto, Plaintiff was paid less than her male peers performing substantially similar work, when viewed as a composite of skill, effort and responsibility.

124.    As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

125.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless and until this Court grants the relief requested herein.

126.    No previous application has been made for the relief requested herein.

## COUNT I—TITLE VII

127.    Plaintiff incorporates herein by reference paragraphs 1 through 126 above, as if set forth herein in their entirety.

128.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, including, without limitation, in connection with pay inequity, demotion, failure to promote, and a hostile work environment, Defendants have violated Title VII.

129.    Defendants acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and its conduct warrants the imposition of punitive damages.

130.    As a direct and proximate result of Defendants' violation of Title VII, Plaintiff has suffered the losses set forth herein and has incurred attorneys' fees and costs.

131.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' retaliatory acts unless and until this Court grants the relief requested herein.

132.    No previous application has been made for the relief requested herein.

## COUNT II – ADEA

133.    Plaintiff incorporates herein by reference paragraphs 1 to 132 above, as if set forth herein in their entirety.

134.    By committing the foregoing acts of discrimination against Plaintiff, including, without limitation, in connection with demotion, failure to promote, and a hostile work environment, Defendants violated the ADEA.

135.   Defendants' violations of the ADEA were intentional and willful under the circumstances, warranting the imposition of liquidated damages.

136.   As a direct and proximate result of Defendants' violation of the ADEA, Plaintiff has suffered the injuries, damages, and losses set forth herein.

137.    Plaintiff is entitled to all costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

138.   No previous application has been made for the relief requested herein.

## **COUNT III – NJLAD**

139.   Plaintiff incorporates herein by reference paragraphs 1 to 138 above, as if set forth herein in their entirety.

140.   Defendants, by the above-described discriminatory acts, including, without limitation, in connection with pay inequity, demotion, failure to promote, and a hostile work environment, have violated the NJLAD.

141.   Members of Defendants' upper management had actual participation in, or willful indifference to, Defendants' wrongful and especially egregious conduct described herein, and their conduct warrants the imposition of punitive damages against Defendants.

142.   As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has sustained the injuries, damages, and losses set forth herein, and has incurred attorney's fees and costs.

143.   Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and unlawful acts unless and until this Court grants the relief requested herein.

144.   No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants:

(a)      declaring the acts and practices complained of herein to be a violation of Title VII

(b)      declaring the acts and practices complained of herein to be a violation of the ADEA;

(d)      declaring the acts and practices complained of herein to be in violation of the NJLAD;

(c) entering judgment against Defendants and in favor of Plaintiff in an amount to be determined;

(d)      enjoining and restraining permanently the violations alleged herein;

(e)      awarding compensatory damages to Plaintiff to make Plaintiff whole for all past and future lost earnings, benefits, and earning capacity, which Plaintiff has suffered and will continue to suffer as a result of Defendants' discriminatory and unlawful misconduct;

(f)      awarding liquidated damages;

(g)      awarding compensatory damages to Plaintiff for past and future emotional upset, mental anguish, humiliation, loss of life's pleasures, and pain and suffering;

(h)      awarding Plaintiff costs of this action, together with reasonable attorney's fees;

(i)      awarding punitive damages to Plaintiff;

(j)      awarding Plaintiff such other damages as are appropriate under the Title VII, the ADEA and the NJLAD; and

(k)      granting such other and further relief as this Court deems appropriate.

**CONSOLE MATTIACCI LAW, LLC**

Dated: July 9, 2020 **BY**: */s/Katherine C. Oeltjen*
Katherine C. Oeltjen, Esquire (57372013)
Stephen G. Console, Esquire (040281983)
110 Marter Avenue, Suite 105
Moorestown, NJ 08057
Telephone: (856) 854-4000
Facsimile: (215) 565-2852
*Attorney for Plaintiff Joanne Lloyd-Bragg*

# EXHIBIT 1

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974, See privacy statement before consolidating this form. | Q   FEPA<br>X   EEOC | |
| STATE OR LOCAL AGENCY: | | |

| NAME (Indicate Mr., Ms., Mrs.)<br>**Joanne Lloyd-Bragg** | HOME TELEPHONE NUMBER *(Include Area Code)*<br>REDACTED |
|---|---|

| STREET ADDRESS<br>REDACTED | CITY, STATE AND ZIP<br>Summit, NJ 07901 | DATE OF BIRTH<br>REDACTED |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>**AXIS Insurance Company**<br>**AXIS Specialty U.S. Services, Inc.** | NUMBER OF EMPLOYEES, MEMBERS<br>> 15 | TELEPHONE (Include Area Code)<br>(908) 508-4300 |
|---|---|---|

| STREET ADDRESS<br>300 Connell Drive, Suite 8000 | CITY, STATE AND ZIP<br>Berkeley Heights, NJ 07922 | COUNTY<br>Union |
|---|---|---|

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>Q Race   Q Color   X Sex   Q Religion   Q National Origin<br>X Retaliation   X Age   Q Disability   Q Other *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br>*Earliest*          *Latest*  12/13/19 (ongoing) |
|---|---|

**The Particulars Are:**

A.    1.    Relevant Work History

I was hired by Respondents in or about September 2003. I currently hold the position of Head of EPL, Media and DP&E ("VP2") at Respondents. In or about August 2018, I began reporting to Elizabeth Neumann (44[1]/female), Head of Professional Lines Claims. Neumann reports to Michael Baumel (54/male), Head of US Claims. I work out of Respondents' Berkeley Heights, NJ office.

I am age fifty-four (54) with more than sixteen years of service at Respondents. Respondents have discriminated against me because of my sex (female), age (54), and the combination of my sex and age ("sex/age") with respect to my compensation and promotional opportunities. Respondents engage in a practice of discriminating against its older employees, including me. I have made multiple complaints of sex discrimination to Respondents, but they have failed to address or remedy such discrimination at Respondents. After I complained of sex discrimination, Respondents withdrew a promised promotion, reduced my job responsibilities, and reassigned a valuable unit that I had successfully managed for fifteen (15) years to a substantially younger and non-complaining male employee. Respondents subjected me to hostile work environment and failed to promote me because of my sex, age, sex/age, and/or in retaliation for my complaints of sex discrimination.

I have consistently demonstrated positive performance and dedication to Respondents and perform my duties in a highly-competent manner. Prior to my complaints of discrimination, I received multiple performance-based promotions and salary increases.

---

[1] All ages herein are approximations.

EEOC Charge of Discrimination
Page 2 of 8
Initials of Charging Party

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements) |
|---|---|
| | I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |

| I declare under penalty or perjury that the foregoing is true and correct. | |
|---|---|
| Date: 12/13/19   Charging Party (*Signature*): *Joanne Hack Bragg* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day Month, and year) |

2.    Harm Summary

I have been discriminated against because of my sex (female), age (54), and/or sex/age, and retaliated against because of my complaints of sex discrimination.  Evidence of the discriminatory and retaliatory conduct to which I have been subjected includes, but is not limited to, the following:

(a) In or about September 2003, Respondents hired me as a Senior Claims Specialist.

(b) My starting salary was $95,000 with a 15% bonus target.

(c) In or about January 2006, I was promoted to the position of EPL & Private D&O Claims Manager ("AVP"). As AVP, I had three (3) direct reports.

(d) After being promoted to AVP, my salary increased to $118,000 with a 25% bonus target and a one-time award of equity shares equaling $1,000.

(e) Throughout this time I was reporting to Tracy Forsyth (53/female).

(f) In or about late-2007 or early-2008, Respondents hired two additional AVPs: Bob Belous (56/male) and Harold Neher (55/male). Belous had the same number of direct reports as me. Neher had no direct reports.

(g) In or about summer 2008, Forsyth was replaced by Fred Zauderer (71/male), who became my supervisor. Prior to departing from her role as my supervisor, Forsyth recommended me for a promotion to EPL, Private D&O and Fiduciary Claims Manager ("VP1").

(h) In or about January 2009, after following up with Zauderer regarding the VP1 promotion, Belous and I were promoted to the position of VP1.

(i) After being promoted to VP1, my salary increased to $162,000 with a 35% bonus target and a one-time award of equity shares.

(j) As VP1, my number of direct reports increased to four (4) or five (5) and my job duties and responsibilities increased.

(k) Soon after my promotion to VP1, Neher was also promoted to VP1.

EEOC Charge of Discrimination
Page 3 of 8
Initials of Charging Party

(l)  Between 2010 and 2014, I did not receive any equity.  During this period, I heard that Belous (male) and Neher (male) received equity.

(m)  In or about 2013, I asked Zauderer, my supervisor at the time, why I was not receiving equity and he responded that he had no idea how or by whom equity was awarded.

(n)  In or about late 2013, Zauderer reassigned one of my units (Fidelity) to Neher and promoted Neher to Fiduciary, Fidelity, Lawyers Professional Claims Manager ("VP2").

(o)  In or about 2014, I again asked Zauderer why I was not receiving equity commensurate to my male comparators and he did not provide me with any explanation.

(p)  In or about 2014, I asked Dave Hayward (56/male), Head of Claims, why I was not receiving equity commensurate to my male comparators and he told me that he would "look into it" but he never followed up with any explanation.

(q)  During this conversation with Hayward, I also asked about being promoted to VP2 and asked what I needed to accomplish to be promoted to this role, but I was never given an explanation.

(r)  Respondents failed to provide any explanation, including the selection criteria, as to why I was not awarded equity commensurate to my male comparators.

(s)  Respondents failed to award me equity commensurate to my male comparators because of my sex.

(t)  In or about May 2015, I began reporting to Michael Baumel (54/male), Head of US Claims.

(u)  In or about 2016, Zauderer left his role as Professional Lines Claims Manager ("SVP") and was put in charge of complex claims. When he left his SVP role, he had approximately twenty-one (21) direct reports. As head of complex claims, he had zero direct reports.

(v)  In or about late 2016, I asked Baumel about being promoted to VP2. I was told that VP2s (including Neher) only received 5% more in bonus than I was receiving so it was "not a big deal."

(w)  At the time, Neher and I had substantially similar responsibilities, including the same number of direct reports.

(x)  Several of Respondents' male employees who were less qualified and who had substantially less responsibility than I had were promoted to VP2 while Respondents' VP1 female employees, including me, were not promoted to the VP2 position.

(y)  Respondents failed to provide any explanation, including the selection criteria, as to why I was not promoted to VP2 at this time while male employees who were less qualified and who has substantially less responsibility than me were promoted to VP2.

(z)  Respondents failed to promote me to VP2 because of my sex.

EEOC Charge of Discrimination
Page 4 of 8
Initials of Charging Party

(aa) In or about February 2018, Neher was terminated from his VP2 position at Respondents. At the time of his termination, Neher was earning a salary of $225,000 with a bonus target of 40%, and he regularly received equity.  He had the same number of direct reports as I had and the same or similar job responsibilities as me.

(bb) In or about February 2018, I was promoted to VP2. As VP2, I was put in charge of more than half of the Professional Lines Claims departments within two of Respondents' offices. As part of my expanded role, I had nineteen (19) direct reports and oversaw a multiple of Respondents' outside contractors. My job duties and responsibilities increased substantially.

(cc) When promoted to VP2, I was awarded a 10% and 5% "bump" in salary and bonus opportunity, respectively. My new salary was $216,000 with a 40% bonus target with no equity target.

(dd) As VP2, I earned substantially less than Neher while possessing far greater responsibility than he did in the same role.

(ee) In or about April 2019, Zauderer told me that he was earning a base salary of $250,000 with a bonus target of 50% and an equity target of $160,000. Zauderer and I hold substantially similar roles at Respondents.

(ff) On or about April 16, 2019, I complained to Laura Botaro (40/female), Respondents' Senior HR representative, of sex discrimination with respect to compensation and promotions. I stated that Zauderer earned substantially more than me for substantially similar work.  At the time, I also pointed out several other male employees who had substantially fewer reports than me but were promoted to the title of SVP.

(gg) On or about April 24, 2019, I met with Botaro and Baumel and, again, complained of sex discrimination with respect to compensation and promotions. During this meeting, I asked to be promoted to SVP, a level equal to my responsibility.  Respondents refused to promote me to SVP, stating that the same would not be "fiscally responsible."

(hh) Respondent's stated reason for failing to promote me to SVP is pretext for sex discrimination.

(ii) I was not promoted to SVP because of my sex.

(jj) In or about June 2019, Baumel informed me that Respondents were creating a new Head of Professional Lines Claims position and stated that he assumed that I would apply.

(kk) In or about June 2019, I applied to and was interviewed for the Head of Professional Lines Claims position at Respondents. I am qualified for such position.

(ll) In or about late-June 2019, Baumel informed me that I would not be promoted and that Respondents instead selected Neumann for the Head of Professional Lines Claims position.

(mm)   Neumann is substantially younger than me (44) and, to my knowledge, has never complained about sex discrimination at Respondents.

EEOC Charge of Discrimination
Page 5 of 8
Initials of Charging Party

(nn) Respondents failed to provide any explanation, including the selection criteria, as to why I was not promoted to the Head of Professional Lines position and Neumann, a substantially younger and non-complaining employee, was.

(oo) Respondents failed to promote me to the Head of Professional Lines Claims position because of my age and/or in retaliation for my complaints of sex discrimination.

(pp) In or about August 2019, Respondents promoted Neumann to the Head of Professional Lines Claims position and she became my supervisor.

(qq) In or about September 2019, Neumann and Baumel informed me that I would be promoted to the newly-created Deputy Head of Professional Lines position at Respondents. I was told that my promotion would be announced during the week of September 29, 2019.

(rr) On or about September 27, 2019, Neumann informed me that my promotion to Deputy Head of Professional Lines would not include an increase in pay. During this discussion, I complained to Neumann of sex discrimination with respect to my compensation and promotions.

(ss) On or about October 2, 2019, Neumann told me that she shared my complaints of sex discrimination with Botaro and Baumel. During this conversation, she accused me of "going around and asking people what they make" and instructed me to "take what is given." She also asked me whether my complaints of sex discrimination were an issue I still "wanted to pursue." After I confirmed my intention to pursue my complaints of sex discrimination, Neumann told me that Respondents were now reconsidering whether I would be promoted to the Deputy Head of Professional Lines position, and told me that Respondents would be reassigning a high-profile investment unit that I had successfully managed for fifteen (15) years (Private D&O) to a different employee.

(tt) Respondents told me they were reconsidering promoting me to the Deputy Head of Professional Lines position and/or reassigning the Private D&O unit to a different employee in retaliation for my complaints of sex discrimination.

(uu) Following my complaints of sex discrimination with respect to compensation and promotions, Respondents treated me differently—and worse—than Respondents have treated non-complaining employees.

(vv) Respondents subjected me to a hostile work environment in retaliation for my complaints of sex discrimination.

(ww)    On or about October 31, 2019, I met with Maggie Bliss, Respondents' new HR Representative, and again complained of sex discrimination with respect to compensation and promotions and retaliation for my complaints of sex discrimination. I told Bliss that Neumann stated that Respondents were reconsidering promoting me to the Deputy Head of Professional Lines position only after I reiterated my intent to pursue complaints of sex discrimination at Respondents.

(xx) On or about November 5, 2019, at Respondent's request, I attended a meeting with Bliss and Neumann. During this meeting, Neumann dismissed my complaints of sex discrimination and retaliation for my complaints of sex discrimination and stated that I had been "emotional" since she was promoted to the Head of Professional Lines Claims position.

EEOC Charge of Discrimination
Page 6 of 8
Initials of Charging Party

(yy) On or about November 5, 2019, in an email to Bliss, I stated that the above meeting was "problematic" and reiterated that Respondents' treatment of me changed, for the worse, after my complaints of sex discrimination with respect to compensation and promotions. I reiterated my belief that Respondents' reconsideration of my promotion to the Deputy Head of Professional Lines position and reassignment of the Private D&O unit were retaliation for my complaints of sex discrimination, and that "it [was] becoming clear that [Respondents], as in the past, [were] not taking any of my points seriously."

(zz) On or about November 6, 2019, in response to my above email, Bliss informed me that Respondents retained an outside law firm to investigate my complaints of sex-based pay discrimination and dismissed my complaints regarding Respondents' reconsideration of promoting me to the Deputy Head of Professional Lines position. Bliss did not acknowledge my complaints regarding the Private D&O unit, retaliation, or that Respondents treated me differently, and worse, after I complained about sex discrimination.

(aaa)   In or about early-November 2019, Neumann informed me that Respondents would not be promoting me to the Deputy Head of Professional Lines role.

(bbb)   Respondents stated that the Deputy Head of Professional Lines position had not been formally approved and that, if it had been, Respondents would have drafted and posted a job description and conducted interviews for such position.

(ccc)   Prior to my conversation with Neumann during which I was asked whether I wanted to pursue by complaints of sex discrimination with respect to compensation and promotions at Respondents, and I said yes, I was given no indication that my promotion to the Deputy Head of Professional Lines position was pending formal approval or that Respondents would need to post and/or interview other employees for such position.

(ddd)   Respondents have a practice of promoting employees without formal approval and/or posting and interviewing for such positions.

(eee)   Respondents' stated reason for failing to promote me to the Deputy Head of Professional Lines position is pretext for retaliation based on my complaints of sex discrimination.

(fff) Respondents failed to promote me to the Deputy Head of Professional Lines position in retaliation for my complaints of sex discrimination.

(ggg)   In or about early-November 2019, Neumann informed me that Respondents would reassign some of my job responsibilities, including overseeing the Private D&O unit which I successfully managed for over fifteen (15) years and certain of my direct reports, to Ari Magedoff.

(hhh)   Magedoff is substantially younger than me (40), male, and, to my knowledge, has never complained about sex discrimination at Respondents.

(iii) I am more qualified and experienced to perform my job responsibilities than the substantially younger and non-complaining male employee to whom my job responsibilities have been assigned.

EEOC Charge of Discrimination
Page 7 of 8
Initials of Charging Party

(jjj) Respondents failed to provide any explanation, including the selection criteria, as to why my job responsibilities were reassigned to Magedoff, a substantially younger and non-complaining male employee.

(kkk)   Respondents reassigned my job responsibilities to Magedoff because of my age sex, and/or in retaliation for my complaints of sex discrimination.

(lll) On or about November 15, 2019, I was contacted by an outside firm retained by Respondents to investigate my claims of sex-based pay discrimination.

(mmm) On or about November 22, 2019, I met with an attorney from the outside law firm retained by Respondents to investigate my claims of sex-based pay discrimination. My complaints of retaliation for my complaints of sex-discrimination, including without limitation failure to promote, reassignment of my job responsibilities, and a retaliatory hostile work environment were not addressed during this meeting.

(nnn)   Respondents have failed to take any measures to address my complaints of retaliation based on my complaints of sex discrimination and/or retaliatory hostile work environment.

(ooo)   Respondents have discriminated and continue to discriminate against me with respect to my compensation and promotions based on my sex, age, sex/age, and/or in retaliation for my complaints of sex discrimination.

(ppp)   Respondents continue to subject me to a retaliatory hostile work environment. Examples of the same include (without limitation):
    a.   Removing me from Respondents' interview committee;
    b.   Cutting me out of case and career discussions with my direct reports;
    c.   Cutting me out of discussions with senior underwriters;
    d.   Neumann informing me not to initiate communications with Baumel.

(qqq)   Respondents engage in a pattern and practice of discriminating against female employees with respect to their compensation and/or promotions. Examples of the same include (without limitation) and in addition to what is set forth herein:
    a.   In or about 2016, Lisa Manzer (female), a colleague within Respondents' casualty claims department, stepped into her predecessor's role of SVP and, despite taking on substantially more responsibility, was never promoted;
    b.   In or about 2014, Kelly Barron (female), one of Respondents' underwriters, stepped into her predecessor's SVP role from her previous position of AVP and was not promoted for approximately one year;
    c.   In or about 2016, Trish McIntyre (female), a colleague within my department, expressed interest in applying for an open AVP position at Respondents, but was not given the opportunity to apply. Respondents gave the open AVP position to a less-qualified, external male applicant.

(rrr) Respondents engage in a pattern and practice of targeting and/or pushing out older employees. Examples of the same include (without limitation):
    a.   In or about 2018, Harold Neher (male) was targeted and terminated by Respondents pursuant to a reduction-in-force ("RIF") when he was in his mid-50s.
    b.   In or about 2018, Bob Lystad (male) was targeted and terminated by Respondents pursuant to a reduction-in-force ("RIF") when he was in his mid-50s.

EEOC Charge of Discrimination
Page 8 of 8
Initials of Charging Party

c.   In or about 2019, Suzanne Beavan (female) was targeted and terminated by Respondents pursuant to a reduction-in-force ("RIF") when she was in her mid-50s.

B.   1.   Respondents' Stated Reasons

(a)   Respondents have provided no explanation for failing to promote me to SVP or the Head of Professional Lines position.

(b)   Respondents' stated reasons for failing to promote me to the Deputy Head of Professional Lines position, that such position was not formally approved and/or that Respondents could not promote me unless the job were posted and other employees were invited to apply, are pretext for retaliation based on my complaints of sex discrimination.

(c)   Respondents have provided no explanation for reassigning my job responsibilities, including oversight of the Private D&O unit and certain of my direct reports, to a substantially younger and non-complaining male employee.

(d)   Respondents have provided no explanation for failing to compensate me the same as my male comparators.

(e)   Respondents have provided no explanation for subjecting me to a hostile work environment because of my complaints of sex discrimination.

(f)   Respondents have provided no explanation for failing to remedy or prevent the sex discrimination and/or retaliation of which I have complained.

(g)   Respondents have provided no explanation for engaging in a practice of discriminating against female and/or older employees.

C.   1.   Statutes and Bases for Allegations

I believe that Respondents have discriminated against me based on my sex (female) and my age, and my sex/age, and have retaliated against me based on my complaints of sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq. ("Title VII"); the Equal Pay Act, 29 U.S.C. § 206, et seq. ("EPA"); the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, et seq. ("ADEA"); the New Jersey Law Against Discrimination, as amended, N.J.S.A. § 10:5-1, et seq. ("NJLAD"); and the New Jersey Equal Pay Act ("NJEPA"), as amended, N.J. Stat. § 34:11-56.1, et seq., as set forth herein.

D.   1.   **Class Charge**

**I bring this Charge as a class and pattern and practice Charge on behalf of myself and any and all current or former female employees of Respondents who have been discriminated against based on sex in connection with compensation and/or promotions at Respondents.**

# EXHIBIT 2

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | Q    FEPA<br>**X**    EEOC | |
| STATE OR LOCAL AGENCY: | | |

| NAME (Indicate Mr., **Ms.**, Mrs.) | HOME TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| REDACTED | REDACTED |

| STREET ADDRESS<br>110 Passaic Avenue | CITY, STATE AND ZIP<br>Summit, NJ 07901 | DATE OF BIRTH<br>REDACTED |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>**AXIS Insurance Company**<br>**AXIS Specialty U.S. Services, Inc.** | NUMBER OF EMPLOYEES, MEMBERS<br><br>> 15 | TELEPHONE (Include Area Code)<br><br>(908) 508-4300 |
|---|---|---|

| STREET ADDRESS<br>300 Connell Drive, Suite 8000 | CITY, STATE AND ZIP<br>Berkeley Heights, NJ 07922 | COUNTY<br>Union |
|---|---|---|

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>Q Race   Q Color   **X** Sex   Q Religion   Q National Origin<br>**X** Retaliation   **X** Age   Q Disability   Q Other *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br><br>*Earliest*                    *Latest*  3/26/20 (ongoing) |
|---|---|

**The Particulars Are:**

A.    1.    Relevant Work History

I was hired by Respondents in or about September 2003. I currently hold the position of Head of EPL, Media and DP&E at Respondents. I currently report to Elizabeth Neumann (44[1]/female), Head of Professional Lines Claims. Neumann reports to Michael Baumel (54/male), Head of US Claims. I work out of Respondents' Berkeley Heights, NJ office.

I am age fifty-five (55) with more than sixteen (16) years of service at Respondents. Respondents have, and continue to, discriminate against me because of my sex (female), age (55), and the combination of my sex and age ("sex/age"). After I complained of sex and age discrimination and/or retaliation, including but not limited to filing my First Charge of Discrimination, Respondents have, and continue to, retaliate against me and subject me to a retaliatory hostile work environment.

I have consistently demonstrated positive performance and dedication to Respondents and perform my duties in a highly-competent manner.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements)<br><br>I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
|---|---|

---

[1] All ages herein are approximations.

EEOC Charge of Discrimination
Page 2 of 5
Initials of Charging Party

| I declare under penalty or perjury that the foregoing is true and correct. | |
|---|---|
| Date: April 2 2020    Charging Party (*Signature*): | SIGNATURE OF COMPLAINANT |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day Month, and year) |

2.    Harm Summary

As set forth in my First Charge of Discrimination, I have been, and continue to be, discriminated against because of my sex (female), age (55), and/or sex/age. Since filing my first Charge of Discrimination, I have been, and continue to be, retaliated against because of my complaints regarding the same. Evidence of the discriminatory and retaliatory conduct to which I have been subjected since filing my first Charge of Discrimination includes, but is not limited to, the following:

(a) On December 13, 2019, I filed my First Charge of Discrimination alleging that Respondents discriminated against me because of my sex, age, and/or sex/age, and retaliated against me because of my complaints of sex discrimination.

(b) On December 13, 2019, I provided courtesy copies of my First Charge of Discrimination to Respondents, including my supervisor, Elizabeth Neumann; Neumann's supervisor, Michael Baumel; Respondents' Human Resources Manager, Maggie Bliss (30/female); and Respondents' General Counsel, Conrad Brooks (50/male).

(c) On or about December 23, 2020, I provided a courtesy copy of my First Charge of Discrimination to Halima Horton, Esq. (_/female), the outside attorney hired by Respondents in November 2019 to investigate my claims of sex-based pay discrimination. Since informing Horton of my First Charge of Discrimination, I have not been contacted by Horton or Respondents regarding the status and/or results of such investigation, or any remedial or corrective action that has been taken regarding the same.

(d) Since becoming aware of my First Charge of Discrimination, Respondents have retaliated against me and subjected me to a retaliatory hostile work environment.

(e) Since becoming aware of my First Charge of Discrimination, Respondents have diminished my job responsibilities, undermined my authority, and excluded me from discussions and critical decision-making processes in which I previously played a role. Examples include, but are not limited to, the following:

    a. I was precluded from selecting my new Claims Manager in a manner consistent with past selections of my direct reports. Instead of permitting me to hire the individual I felt was best for the job, Neumann directed me to hire a less qualified and substantially younger individual;

    b. Neumann reassigned my authority to make strategic decisions on complex claims to Leor Kaplan (39/male), a less qualified, substantially younger, and non-complaining male employee. I previously possessed and routinely exercised full authority over these decisions. Now, such decisions must be approved by Kaplan;

EEOC Charge of Discrimination
Page 3 of 5
Initials of Charging Party

c.  Neumann reassigned partial responsibility for a weekly meeting that I ran successfully on my own for years to a substantially younger, male, and noncomplaining employee, and subsequently cancelled the meeting going forward without my knowledge;

d.  Neumann interferes with and/or question decisions made within my authority, often in front of other employees including my direct reports;

e.  I was removed from Respondents' Senior Management Group;

f.  I am no longer designated as "Manager" in certain of Respondents' internal databases;

g.  I have been removed from several management meetings and e-mail distributions.

h.  Neumann instructed me not to communicate with Baumel directly, and Baumel avoids participating in calls and other discussions in which I am participating;

i.  Neumann excludes me from discussions with my direct reports and senior underwriters;

j.  Neumann publicly refers to my team as the "ancillary" team, and refers to the team of a younger, male, and non-complaining employee as the "premier" team.

(f)  Respondents diminished my job responsibilities, undermined my authority, and excluded me from discussions and critical decision-making processes in which I previously played a role because of my sex, age, and/or sex/age, and in retaliation for my complaints of sex and age discrimination and/or retaliation.

(g)  Respondents subjected me to a hostile work environment because of my sex, age, and/or sex/age, and in retaliation for my complaints of sex and age discrimination and/or retaliation.

(h)  On or about March 2, 2020, I received my 2019 Annual Performance Review and 2019 Year-End Compensation Statement. My 2019 Annual Performance Review and 2019 Year-End Compensation Statement were prepared by Neumann and Baumel, both of whom were aware of my first Charge of Discrimination accusing them both of sex and age discrimination and/or retaliation.

(i)  My 2019 Annual Performance Review falsely and unjustly criticized my performance and was lower than reviews I received in years prior to filing my First Charge of Discrimination. Many of the remarks contained in my 2019 Annual Performance Review directly contradict my positive 2019 mid-year review which was administered by Baumel before I filed my First Charge of Discrimination.

(j)  Respondents gave me a lower performance review which falsely and unjustly criticized my performance because of my sex, age, and/or sex/age, and in retaliation for my complaints of sex and age discrimination and/or retaliation.

EEOC Charge of Discrimination
Page 4 of 5
Initials of Charging Party

(k) My 2019 Year-End Compensation Statement awarded to me a smaller annual bonus and salary increase than I received in years prior to filing my First Charge of Discrimination, and did not include any award of equity shares which I had received in years prior to filing my First Charge of Discrimination.

(l) Respondents decreased my annual bonus and salary increase and failed to award me equity shares because of my sex, age, and/or sex/age, and in retaliation for my complaints of sex and age discrimination and/or retaliation.

(m) On or about March 13, 2020, I submitted to Respondents a written response to my 2019 Annual Performance Review and 2019 Year-End Compensation Statement, stating in part: "It is my opinion that the review I received on March 2, 2020 is directly related to the fact that the two people who prepared the same know that I have filed an EEOC Charge naming them and accusing them of engaging in sex discrimination, age discrimination, and retaliation. This review is a lower review than my previous reviews and, as set forth below, is both unfounded and unfair… Many of the remarks from my March 2, 2020 review are in contradiction with my positive mid-year review, administered by Mike Baumel. The bonus I received in connection with my March 2, 2020 review is significantly lower than years past. Furthermore, I did not receive any stock, despite having received stock in the past and being told by Mike Baumel that if I did not receive at least $40K in shares, "something was wrong."

(n) I have received no response to my written response to my 2019 Annual Performance Review and 2019 Year-End Compensation Statement.

(o) On or about March 6, 2020, I went out of work on a medical leave of absence, due to the stress and anxiety from the sex and age discrimination and/or retaliation to which I have been subjected. I remain on a medical leave of absence.

(p) Since informing Respondents of my First Charge of Discrimination, I am unaware of any corrective or remedial measures taken by Respondents in response to my complaints of sex and age discrimination and/or retaliation. I have not been interviewed and I am unaware of any investigation or disciplinary action being taken. I am also unaware of any steps being taken to prevent further discrimination or retaliation against me, which I believe has allowed the conduct described herein to occur.

B.    1.    Respondents' Stated Reasons

(a) Respondents have provided no explanation for diminishing my job responsibilities, undermining my authority, and excluding me from discussions and critical decision-making processes in which I previously played a role since they became aware of my First Charge of Discrimination.

(b) Respondents have provided no explanation for falsely and unjustly criticizing my performance and giving me a lower review than prior years since they became aware of my First Charge of Discrimination.

(c) Respondents have provided no explanation for decreasing my annual bonus and failing to award me equity shares since they became aware of my First Charge of Discrimination.

EEOC Charge of Discrimination
Page 5 of 5
Initials of Charging Party

(d)     Respondents have provided no explanation for subjecting me to a hostile work environment since they became aware of my First Charge of Discrimination.

(e)     Respondents have provided no explanation for failing to remedy or prevent the sex and age discrimination and/or retaliation of which I have complained.

(f)     Respondents have provided no explanation for engaging in a practice of discriminating against female and/or older employees.

(g)     Respondents have provided no explanation for engaging in a practice of retaliating against complaining employees.


C.     1.     Statutes and Bases for Allegations

I believe that Respondents have discriminated against me based on my sex, age, and my sex/age, and have retaliated against me based on my complaints of sex and age discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"); the Equal Pay Act, 29 U.S.C. § 206, *et seq.* ("EPA"); the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA"); the New Jersey Law Against Discrimination, as amended, N.J.S.A. § 10:5-1, *et seq.* ("NJLAD"); and the New Jersey Equal Pay Act ("NJEPA"), as amended, N.J. Stat. § 34:11-56.1, *et seq.*, as set forth herein.

# EXHIBIT 3

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | **Joanne Lloyd-Bragg**<br>REDACTED<br>**Summit, NJ 07901** | From: | **Philadelphia District Office**<br>**801 Market Street**<br>**Suite 1000**<br>**Philadelphia, PA 19107** |
|---|---|---|---|

|   | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2020-01403** | **Legal Unit,**<br>**Legal Technician** | **(267) 589-9700** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Jamie R. Williamson*

**Jamie R. Williamson,**
**District Director**

June 29, 2020

*(Date Mailed)*

Enclosures(s)

cc: **AXIS INSURANCE COMPANY**
**Stephanie J. Peet, Esq. (For Respondent)**
**Jackson Lewis P.C.**
**1601 Cherry St., Suite 1350**
**Philadelphia, PA 19102**

**Katherine C. Oeltjen, Esq. (For Charging Party)**
**CONSOLE MATTIACCI LAW, LLC**
**1525 Locust Street, 9th Floor**
**Philadelphia, PA 19102**