NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| JOANNE LLOYD-BRAGG, | : | **Civil Action No. 20-08559-MEF-AME** |
|  | : |  |
| Plaintiff, | : |  |
|  | : | **OPINION and ORDER** |
| v. | : |  |
|  | : |  |
| AXIS INSURANCE COMPANY, et al. | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

**ESPINOSA**, Magistrate Judge

This matter comes before the Court on the motion of Plaintiff Joanne Lloyd-Bragg ("Plaintiff") for an order compelling Defendants Axis Insurance Company and Axis Specialty U.S. Services, Inc. ("Defendants"[1]) to produce emails they have withheld in discovery on attorney-client privilege grounds, that concern Defendants' denial of Plaintiff's second reasonable accommodation request and subsequent decision to terminate her employment. [D.E. 95]. Defendants oppose the motion. [D.E. 97]. The Court has considered the parties' written submissions and heard argument on the record [*see* D.E. 107]. For the following reasons, Plaintiff's motion to compel is granted in part and denied in part, and Defendants shall produce to Plaintiff limited additional material consistent with this Opinion and Order.

---

[1] Defendants assert Plaintiff was only employed by Axis Specialty U.S. Services, Inc. [D.E. 97-1 at 3 n.3]. The District Court previously found "that the purported facts are adequate to sustain Plaintiff's claims against Defendants under the integrated enterprise theory at this stage of the litigation." [D.E. 47 at 3]. Consistent with that finding, this Court refers to Defendants collectively.

## I.    FACTUAL BACKGROUND

Plaintiff, an insurance executive who was employed by Defendants for nearly seventeen years, asserts claims for discrimination, retaliation, hostile work environment, and unlawful termination pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 *et seq.*, the Americans with Disabilities Act ("ADA"), as amended, 42. U.S.C. § 12101 *et seq.*, the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 *et seq.*, the New Jersey Family Leave Act, N.J.S.A. § 34:11B-4 *et seq.*, and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*, respectively. [*See generally* D.E. 65].

According to Plaintiff, Defendants compensated her at a lower rate and "prioritiz[ed] the retention and promotion of younger employees," despite her exemplary performance managing large segments of Defendants' claims business and receiving more work than male employees in comparable or higher ranks. [*Id.* ¶¶ 44-45, 48, 55, 70-73]. In 2019, Plaintiff voiced her concerns over what she viewed as a sex-based compensation disparity and unfair promotion patterns to her direct report, Michael Baumel ("Baumel"), and a senior human resources representative, Laura Botaro ("Botaro"). [*Id.* ¶¶ 62, 74, 76-77]. Plaintiff alleges she was then effectively demoted when Defendants promoted Elizabeth Neumann ("Neumann"), who was "substantially less qualified," was approximately ten years younger, and had not complained of sex-based discrimination. [*Id.* ¶¶ 81-87]. Later in 2019, Plaintiff renewed her complaints to her new direct report, Neumann, which Neumann shared with Baumel and Botaro. [*Id.* ¶¶ 90-91].

Plaintiff alleges that Defendants and certain other employees retaliated against her for making complaints, resulting in and exacerbating a diagnosed disability, requiring two leaves of absence from work, causing Plaintiff to allege discrimination charges against Defendant with the

United States Equal Employment Opportunity Commission, and, ultimately, leading her to file this action on July 9, 2020. [*Id.* ¶¶ 93, 95-96, 100, 104, 107, 111-12, 119, 122-35].

During her second, unpaid medical leave, on December 15, 2020, Plaintiff requested a second reasonable accommodation: to return to work in any qualifying role while reporting to anyone other than Baumel or Neumann. [*Id.* ¶¶ 136-37]. In response, Defendants requested that Plaintiff provide a completed "ADA Health Care Provider Questionnaire" from her medical provider. [*Id.* ¶ 138]. Plaintiff was unable to do so and instead submitted other medical documentation in support of her request. [*Id.* ¶¶ 141-43, 149]. Upon Plaintiff's failure to appear for work on the date set by Defendants, Defendants denied Plaintiff's second accommodation request and terminated her employment on February 1, 2021. [*Id.* ¶¶ 144, 150-51].

Defendants categorically deny Plaintiff's claims and assert as an affirmative defense that the claims are barred "for her failure to engage in the interactive process." [D.E. 66 at 21]. Defendants also assert that they "acted reasonably and in good faith at all times." [*Id.* At 19].

## II.    THE DISCOVERY DISPUTE

The Court granted Plaintiff leave to move to compel the production of the subject emails and the depositions of certain of Defendants' in-house attorneys, including their Chief Legal Officer, Andrew Weissert ("Weissert"), as well as permission for Defendants to cross-move for a protective order to prevent Plaintiff from deposing those in-house attorneys. [D.E. 92].[2]

### A.    Plaintiff's Motion to Compel

Plaintiff seeks an order compelling production of the subject emails despite Defendants' assertion that they are protected by the attorney-client privilege, and argues that Defendants have

---

[2] While the Court granted Plaintiff leave to file those motions by December 7, 2022, Plaintiff did not file a motion to compel the depositions of Defendants' in-house attorneys. [D.E. 92, 94].

waived the privilege by, among other things, placing those emails "directly in issue" in this litigation through their asserted defenses. [D.E. 95-3 at 1, 4, 10-15]. She argues Defendants' privilege assertions have "completely shielded" her from discovering the factual basis of their defenses and contentions, and that Defendants have not produced information concerning: (i) their decisions to terminate her employment and deny her second accommodation request; (ii) their contention that they met their legal obligations under the ADA with respect to the interactive process; and (iii) their determination that she failed to engage in the interactive process by failing to submit the requested questionnaire. [*Id.* at 4-5].[3] Plaintiff also argues the subject communications are not privileged because they "relate to business rather than legal matters." [*Id.* at 8].

B.    Defendants' Opposition

Defendants oppose Plaintiff's motion, and argue the privilege is preserved because they "have not proactively sought to introduce the contents or substance of attorney-client privileged communications to support [their] defenses …."[4] [D.E. 97-1 at 2]. Defendants concede that Plaintiff's medical leave and accommodation requests "were the subject of attorney-client privileged legal advice from both in-house counsel and outside counsel," but contend those communications have neither been referenced or submitted as an exhibit to any answer or deposition, nor been otherwise voluntarily disclosed. [*Id.* at 8-9]. Defendants affirm they do not

---

[3] Plaintiff also states defense counsel directed witnesses to not answer certain questions during their depositions on these topics, citing the attorney-client privilege. [D.E. 95-3 at 4-5]. According to Plaintiff, while Baumel was identified as the sole person involved in the termination decision, his testimony reveals that, at a minimum, Weissert was also involved in the decision. [*See* D.E. 95-3 at 5, 14 (stating Baumel testified he would not have been able to terminate Plaintiff without facts he received from Weissert)].

[4] Defendants filed their opposition under seal because it contains information Plaintiff has designated as confidential. [D.E. 97 at 2]. While Defendants disagree with those designations, they nevertheless request leave to file the opposition under seal, *nunc pro tunc*, as of the date of filing. [*Id.* at 3].

intend to rely upon, reference, disclose, or submit those communications at trial or in connection with a summary judgment motion. [*Id.* at 9].

Defendants also argue the subject emails are privileged because they involve "predominantly legal advice made during active litigation," as opposed to advice on a business decision, and that the mere conveyance of facts does not make privileged communications discoverable. [*Id.* at 13-14]. With respect to Plaintiff's waiver argument, Defendants assert there has been no privilege waiver because they have not placed the subject emails "in issue." [*Id.* at 15]. Defendants rely on caselaw supporting their contention that raising a good faith affirmative defense does not waive the attorney-client privilege when the privileged information is not used in support of their defense. [*Id.* at 15-17].[5]

Finally, Defendants dispute Plaintiff's assertion that they have not produced documents concerning the basis for their interactive process affirmative defense. [*Id.* at 11 (citing documents attached to Plaintiff's moving brief)]. For example, Exhibit A to Plaintiff's moving brief is a January 26, 2021 email from Lizet Cardinoza ("Cardinoza"), Defendants' Global Head of Benefits, to "Brian Bragg,"[6] which Defendants produced in discovery and concerns Plaintiff's leave of absence, second accommodation request, and employment. [D.E. 95-4].[7] Similarly,

---

[5] Separately, Defendants argue Plaintiff has waived the right to seek to compel Weissert's deposition by failing to file a motion to compel by the court-ordered deadline. [D.E. 97-1 at 1 n.1]. Defendants reserve their right to file a motion for a protective order on the issue. [*Id.*]. While Plaintiff should have at least sought relief from that deadline, the Court finds, by the barest margin, good cause to excuse that failure. Guided by the Court's rulings in this Opinion, the parties shall meet and confer on Plaintiff's request to depose Weissert. To the extent the parties are unable to resolve any dispute on that question, after exhausting their meet and confer obligations under Local Civil Rules 16.1 and 37.1, they shall file a joint dispute letter of no more than 8 pages (1.5 line spacing) no later than August 25, 2023. Because of the age of this case and the need to complete discovery, no extensions of this deadline will be granted.

[6] It appears Plaintiff used the "Brian Bragg" email account during the relevant period.

[7] Weissert, Botaro, and an account named "AXIS_Global_Benefits" were also copied in the January 26 email, which includes a chain of emails dating back to December 15, 2020.

Exhibit D to Plaintiff's moving brief contains Cardinoza's February 1, 2021 email to Plaintiff, which also copies Weissert and memorializes Defendants' termination of Plaintiff's employment and denial of her accommodation request. [D.E. 95-7].

       C.    <u>Plaintiff's Reply</u>

In reply, Plaintiff argues that none of the discovery Defendants have produced "depict[s] any internal deliberative process by Defendants," and reiterates her contention that Defendants have waived the privilege over the subject communications by placing them "in issue" in this litigation either through the assertion of their defenses or by Weissert's alleged communication of facts to Baumel, which led Baumel to make the termination decision. [D.E. 101 at 6-7].

       D.    <u>Relevant Post-Briefing Events</u>

During a February 17, 2023 telephonic conference, the Court addressed Plaintiff's pending motion to compel and determined that Plaintiff had made a *prima facie* showing that the withheld documents may not be covered by the attorney-client privilege, sufficient to warrant an *in camera* review. [*See* D.E. 107]. In response, Plaintiff filed a letter on February 24, 2023, identifying privilege log entries corresponding to documents she maintains have been improperly withheld, noting that her list may not capture each document at issue, and requesting that Defendants identify any other document in their privilege log that may fall within the purview of the motion to compel. [D.E. 104].[8] In a March 3, 2023 reply letter, Defendants identified the communications at issue and argued that an *in camera* review was unwarranted because the

---

[8] Plaintiff also identifies a potential deficiency in Defendants' privilege log, asserting it does not identify any communication involving Baumel and no such communication has been otherwise produced. [D.E. 104 at 2]. Plaintiff requested confirmation that no such communication exists. [*Id.*]. The parties have not advised whether this issue remains outstanding. However, any such emails withheld by Defendants on the same basis as those discussed in this Opinion, or otherwise, should be produced to the Court forthwith for *in camera* inspection, or produced to Plaintiff to the extent the Court's holding in this Opinion applies to such communications.

attorney-client privilege applies to the subject communications. [D.E. 105]. On March 10, 2023, the Court directed Defendants to submit, for *in camera* review, the documents identified by Plaintiff's February 24 letter and any additional documents falling within the scope of her privilege challenge. [D.E. 107]. In compliance with the Court's March 10 Order, on March 17, 2023, Defendants submitted the subject emails for *in camera* review, which they contend "are attorney-client privileged e-mails wherein [their] in-house counsel addressed the issues of the termination of Plaintiff's employment and the interactive process under the [ADA]." [D.E. 108].[9]

### III. LEGAL STANDARDS

To resolve this motion, the Court begins with Federal Rule of Civil Procedure 26(b), which governs the general scope of civil discovery and provides that "privileged matters are not discoverable." *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 861 (3d Cir. 1994) [hereinafter "*Rhone-Poulenc*"]; *see also* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …."). While broadly construed, "the scope of discovery … is not without its limits and may be circumscribed." *Graham v. Monmouth Cnty. Buildings & Grounds*, Civ. No. 19-18763, 2022 WL 522811, at *3 (D.N.J. Feb. 22, 2022) (citation omitted). One of those limits is the attorney-client privilege, which "protects communications between the attorney and client to promote open and frank discussions." *Id.* (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) ("The privilege recognizes that sound legal advice or advocacy serves public ends and … depends upon the lawyer's being fully informed by the client.")).

---

[9] Defendants also submitted an email chain between Defendants' outside and in-house counsel. [*See* D.E. 108 at 1-2]. Defendants deemed the communication non-responsive in light of Plaintiff's indication that she was not seeking emails involving outside counsel, and therefore the Court does not address it in this Opinion.

The Court has jurisdiction pursuant to 28 U.S.C. § 1331, and therefore the federal privilege law governs. *See Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000) (citation omitted); *see also* Fed. R. Evid. 501. As construed by the Third Circuit, the attorney-client privilege applies only if:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979). In the corporate context, "communications between an attorney and the corporation's employees … will be afforded the protections of the privilege where doing so would give effect to the purposes of the privilege." *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990) (citing *Upjohn Co.*, 449 U.S. at 389).

The privilege "is construed narrowly," so as to "protect[] only those disclosures— necessary to obtain informed legal advice—which might not have been made absent the privilege." *Westinghouse Elec. Corp. v. Rep. of Philippines*, 951 F.2d 1414, 1423-24 (3d Cir. 1991) (internal citations and quotation marks omitted). The party asserting the privilege bears the burden of proof. *Grand Jury Empanelled February 14, 1978*, 603 F.2d 469, 474 (3d Cir. 1979). Particularly, that party must show "that the communication would not have been made but for the client's need for legal advice or services.'" *Graham*, 2022 WL 522811, at *4 (quoting *Munich Reinsurance Am., Inc. v. Am. Nat'l Ins. Co.*, Civ. No. 09-6435, 2011 WL 1466369, *17- *18 (D.N.J. Apr. 18, 2011)); *Leonen*, 135 F.R.D. at 99 (as applied to a corporate entity).

Importantly, "[t]he [attorney-client] privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co.*, 449 U.S. at 395; *Leonen*, 135 F.R.D. at 98 ("The privilege, however, protects only the disclosure of the protected document; it does not protect disclosure of the underlying facts in the documents."). "As the Third Circuit has explained, '[f]acts are discoverable, the legal conclusions regarding those facts are not. A litigant cannot shield from discovery the knowledge it possessed by claiming it has been communicated to a lawyer; nor can a litigant refuse to disclose facts simply because that information came from a lawyer.'" *Jorjani v. N.J. Inst. of Tech.*, Civ. No. 18-1169, 2023 WL 2986694, at *5 (D.N.J. Apr. 18, 2023) (quoting *Rhone-Poulenc*, 32 F.3d at 854). Finally, waiver of the attorney-client privilege may occur by express waiver (*i.e.*, "by voluntary disclosure to a third-party"), or implied waiver (*i.e.*, "by placing the communications at issue in the litigation."). *Graham*, 2022 WL 522811, at *4 (citations omitted).

## IV. ANALYSIS

### A. Defendants Have Not Placed Legal Advice "In Issue" in the Litigation.

The parties disagree over the correct application of the "in issue" waiver doctrine. Plaintiff argues Defendants placed any legal advice in the subject emails in issue by asserting certain defenses to her claims and by having Baumel terminate Plaintiff based on facts communicated by Weissert. In contrast, Defendants argue no waiver has occurred because they have not affirmatively relied upon, or placed in issue, any privileged communication in defending this action. Plaintiff's broad construction of the doctrine has been expressly rejected by the Third Circuit.

In this Circuit, "[t]he advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Rhone-Poulenc*,[10] 32 F.3d at 863 (citations omitted) (explaining that the client must take "the affirmative step … to place the advice of the attorney in issue"); *N. River Ins. Co. v. Phil. Reinsurance Corp.*, 797 F. Supp. 363, 370 (D.N.J. 1992) (stating that a party "puts 'in issue' the contents of an attorney-client communication … only when [it] has asserted a claim or defense that he intends to prove by disclosure of an attorney-client communication" (internal citation omitted)). This construction "provide[s] certainty that the client's confidential communications will not be disclosed unless [it] takes an affirmative step to waive the privilege, and … predictability for the client concerning the circumstances by which [it] will waive that privilege." *Rhone-Poulenc*, 32 F.3d at 863. The fact that a document is relevant does not place legal advice in issue, and "that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue." *Id.* Moreover, there is no automatic waiver when a party's state of mind is placed in issue, "as the interests [the privilege] is intended to protect are still served by confidentiality." *Id.* at 864.

In *Rhone-Poulenc*, a patent infringement action, the advice of the alleged infringer's attorney was deemed potentially relevant "to the question of whether [it] acted with a willful state of mind." *Id.* at 863. However, the Third Circuit noted that such legal advice "is not placed in issue, and the privilege is not waived, unless the infringer seeks to limit its liability by describing that advice and by asserting that he relied on that advice." *Id.* Conversely, "[w]hen the

---

[10] "Although *Rhone-Poulenc* [] was decided pursuant to Pennsylvania state law, the Third Circuit noted that '[n]o one has argued … that there are any principles or rules of law as to the attorney client privilege unique to Pennsylvania that should control the resolution of our decision on these matters.'" *Ivanovs v. Bayada Home Health Care, Inc.*, Civ. No. 17-1742, 2021 WL 10396700, at *4 (D.N.J. May 27, 2021) (quoting *Rhone-Poulenc*, 32 F.3d at 861-62).

advice of counsel is asserted as a defense by the infringer, the patent owner may explore facts that would make it more probable than not that the infringer did not rely in good faith on that advice." *Id.* Ultimately, the Circuit held the alleged infringer did not waive the privilege "by filing this lawsuit or by placing its state of mind in issue," because it did not "interject[] the advice of counsel as an essential element of a claim in this case." *Id.* at 864.

The Court rejects Plaintiff's misplaced reliance in *Johnson v. J. Walter Thompson U.S.A., LLC*, Civ. No. 16-1805, 2017 WL 3432301 (S.D.N.Y. Aug. 9, 2017), which follows the Second Circuit's broader formulation of the "in issue" waiver doctrine. In *United States v. Bilzerian*, the Second Circuit held that "the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications." 926 F.2d 1285, 1292 (2d Cir. 1991), *cert. denied*, 502 U.S. 813 (1991). Such an expansive interpretation has been expressly rejected by Courts in this Circuit. *See, e.g., McKee v. PetSmart, Inc.*, 71 F. Supp. 3d 439, 441-43 (D. Del. 2014) ("conclud[ing] that [the] defendant has not waived the attorney-client privilege by asserting a good faith affirmative defense because defendant has not relied on privileged communications or testimony in support of its defense"); *Ivanovs*, 2021 WL 10396700, at *4 ("find[ing] that a defendant in an FLSA action does not waive its attorney-client privilege by asserting as an affirmative defense that it acted in good faith"). Bound by Third Circuit law, this Court finds *Johnson* and Plaintiff's argument unpersuasive.

Having reviewed the subject emails and the record before it, the Court holds that Defendants have not placed legal advice "in issue." To date, Defendants have not disclosed or described any attorney-client privileged communication in defending the action or in supporting their affirmative defenses. Rather, Defendants have consistently avoided the disclosure of privileged material by withholding documents they have deemed privileged, and have directed

their witnesses not to answer questions that would reveal confidences at depositions. Specifically, Defendants affirm they have not: (i) "disclosed or described their attorney-client privileged communications, other than completing and producing the required privilege log"; (ii) "questioned any of their witnesses at their depositions regarding the substance of any attorney-client privileged communications"; or (iii) "obtained or submitted any affidavits regarding same." [D.E. 97-1 at 15]. Importantly, "Defendants have in no way [pled] advice of counsel as an affirmative defense," and "[t]he advice of counsel is not an express element of any claim or defense." *Jorjani*, 2023 WL 2986694, at *11-12; *see also Piazza v. Cnty. of Luzerne*, Civ. No. 13-1755, 2015 WL 6690090, at *4 (M.D. Pa. Oct. 30, 2015) (finding waiver where the defendant disclosed that he terminated the plaintiff "on the advice of counsel"). There is no evidence that Defendants have attempted to defend the action by disclosing or relying on the communications it seeks to withhold, and the mere assertion of a defense that renders an attorney-client communication relevant is insufficient for implied waiver. *See N. River Ins. Co.*, 797 F. Supp. at 370 (finding a defendant was not "using the attorney-client privilege as a 'sword and shield' through selective disclosure of privileged documents" where it had "no intention to prove its case in any way by reliance on any attorney-client communication, whether produced or withheld …"). Accordingly, the Court finds the "in issue" doctrine inapplicable.

Consequently, Defendants shall be confined to attempting to establish their affirmative defenses "through non-privileged communications and actions." *See Ivanovs*, 2021 WL 10396700, at *5 (accepting the defendant's "representation that it will not rely upon advice of counsel in support of its affirmative defenses"). If, however, Defendants later attempt to advance the advice of counsel in support of their defenses, Plaintiff shall have the right to file an appropriate motion—*e.g.*, a motion *in limine*—to preclude such evidence at trial. *See McKee*, 71

F. Supp. 3d at 443 ("Evidentiary issues relating to defense preclusion are not ripe and should be raised with the trial judge at the appropriate time. However, defendant bears the risk that such a defense and any documents withheld from discovery would not be admitted at trial.").

   B. <u>Defendants' In-house Counsel Primarily Acted in a Legal Capacity.</u>

  Next, the Court considers whether Weissert acted as a legal or business advisor when communicating with others concerning Plaintiff's employment. Only in the case of the former, will the attorney-client privilege apply. *Graham*, 2022 WL 522811, at *4. The task of determining whether Defendants have met their burden to show the attorney-client privilege applies is complicated, modestly, by the early involvement of in-house counsel in this lawsuit, which had commenced at the time the subject emails were exchanged.

  In the corporate context, applying the privilege may be difficult "because in-house counsel often participates in and renders decisions about business issues." *In re Riddell Concussion Reduction Litig.*, Civ. No. 13-7585, 2016 WL 7108455, at *4 (D.N.J. Dec. 5, 2016) (citation omitted) [hereinafter "*Riddell*"]. Thus, it can be challenging to distinguish whether certain advice is legal or business in nature, requiring an analysis "focused on whether the communication is designed to meet problems that can fairly be characterized as predominately legal.'" *Graham*, 2022 WL 522811, at *4 (quoting *Leonen*, 135 F.R.D. at 99); *Supernus Pharms., Inc. v. TWI Pharms., Inc.*, Civ. No. 15-369, 2016 WL 5339594, at *2 (D.N.J. June 21, 2016) ("If the primary purpose was to provide legal advice or to prepare for litigation, the privilege applies."). "[I]f a communication is made primarily for the purpose of soliciting legal advice, an incidental request for business advice does not vitiate the attorney-client privilege." *Riddell*, 2016 WL 7108455, at *4 (citation and internal quotation marks omitted).

Guided by these principles, the Court must assess the role Weissert played with respect to each of the subject emails. With the exception of one email,[11] the Court is satisfied that Weissert acted primarily in his legal capacity with respect to the subject emails, which were sent during active litigation. Even if business concerns were also discussed, the Court finds they were incidental to the primarily legal purpose of the communications.

C.    The Subject Emails Contain Privileged and Non-Privileged Communications.

However, the Court must still address whether the attorney-client privilege applies to the documents listed in Defendants' privilege log, which consist of (i) internal emails between Weissert and certain of Defendants' other employees; (ii) internal emails among certain of Defendants' employees that do not include Weissert or any other attorney; and (ii) external emails between some of Defendants' employees and Plaintiff. In applying the privilege,[12] the Court finds that some of those emails—predominantly those in the chain of prior communications leading to a privileged communication—contain non-privileged information that must be produced to Plaintiff.

As an initial matter, the external emails with Plaintiff found in the document identified by Defendants as Document No. 735,[13] do not include an identified attorney as a participant and were not sent for the purpose of securing or delivering legal advice. *See In re Grand Jury Investigation*, 599 F.2d at 1233. Accordingly, the privilege is inapplicable. Even if Document No. 735 were to contain privileged information, Defendants expressly waived the privilege by disclosing such information to Plaintiff. *See Graham*, 2022 WL 522811, at *4.

---

[11] This document is an email from Cardinoza to Plaintiff concerning her "[r]eturn to work status." [D.E. 105-1 at D-PRIV 003861 – D-PRIV 003862]. Weissert did not participate in that email exchange.

[12] The analysis is confined to the only privilege Defendants have claimed—*i.e.*, the attorney-client privilege.

[13] Document No. 735 is bates stamped as D-PRIV 003861 through D-PRIV 003862.

The balance of the documents listed on Defendants' privilege log contain both privileged and non-privileged information. The Court generally finds that the identified communications between Weissert and Cardinoza[14] were properly withheld under the attorney-client privilege because legal advice is sought or delivered in those emails in connection with Defendants' need for such advice concerning Plaintiff's employment-related matters during active litigation. *See In re Grand Jury Investigation*, 599 F.2d at 1233; *Graham*, 2022 WL 522811, at *4. Draft communications reflecting legal advice are privileged for those same reasons. *See Se. Pa. Transp. Auth. v. Caremarkpcs Health, L.P.*, 254 F.R.D. 253, 258 (E.D. Pa. 2008) ("Drafts of documents prepared by counsel or circulated to counsel for comments on legal issues are considered privileged if they were prepared or circulated for the purpose of giving or obtaining legal advice and contain information or comments not included in the final version." (citation omitted)); *Rohm & Haas Co. v. Brotech Corp.*, 815 F. Supp. 793 (D. Del. 1993) ("Drafts often contain information and communications relating to the subject matter of the document, including … proposed material to be included, suggested additions and deletions, and comments on the contents, all of which are intended to be considered confidential between attorney and client and not intended for public disclosure."), *aff'd*, 19 F.3d 41 (Fed. Cir. 1994).

Notwithstanding the foregoing conclusion, the Court finds the privilege log entry Defendants identify as Document No. 728,[15] as well as some of the underlying emails that form parts of other log entries, are not privileged. First, with respect to Document No. 728, Weissert "is a mere recipient of that email" and "did not actively participate in providing legal advice as

---

[14] Some of those emails also include other employees of Defendants as recipients. [*See* D.E. 105-1].

[15] Document No. 728 is bates stamped as D-PRIV 003841 through D-PRIV 003844. Despite being an internal communication between Cardinoza and Weissert, that communication merely consists of an email forwarding a chain of external emails between Plaintiff and some of Defendants' employees.

part of that email." *Dejewski v. Nat'l Beverage Corp.*, Civ. No. 19-14532, 2021 WL 118929, at *1 (D.N.J. Jan. 12, 2021) ("The mere fact that a party's counsel has been copied on an email does not establish that a document is privileged."); *see also Cmty. Ass'n Underwriters of Am., Inc. v. Queensboro Flooring Corp.*, Civ. No. 10-1559, 2014 WL 6676142, at *2 (M.D. Pa. Nov. 25, 2014) ("[M]essages such as fax cover sheets which merely forward a document to counsel are not protected by attorney client privilege." (citation omitted)). Second, the sole purpose of these internal communications is to convey facts concerning Defendants' emails with Plaintiff, and thus, the communications themselves do not reveal any confidential matter or "legal conclusions regarding those facts." *Rhone-Poulenc*, 32 F.3d at 854; *see also Upjohn Co.*, 449 U.S. at 395; *Jorjani*, 2023 WL 2986694, at *5. Finally, as previously held, the underlying external emails that include Plaintiff as a sender or recipient cannot be deemed privileged given that their contents were voluntarily disclosed to Plaintiff, who is a third party and Defendants' adversary in this action. These external emails are analogous to email attachments, which "must individually satisfy the criteria for falling within the privilege." *Leonen*, 135 F.R.D. at 98 (citation omitted).

Based on the foregoing analysis and conclusions, the Court summarizes its rulings as follows:

| Document No. | Bates Number | Ruling |
|:---:|:---:|:---:|
| 702 | D-PRIV 003751 | This document contains privileged and non-privileged information. Defendants shall produce this document with appropriate redactions only to the contents of the top email sent on January 27, 2021, at 9:44:55 a.m.[16] |

---

[16] "Because some documents may contain both discoverable and privileged information it would be appropriate, if not too burdensome, to redact them accordingly." *Rhone-Poulenc*, 32 F.3d at 864; *see also McKee*, 71 F. Supp. 3d at 443 ("[T]o the extent that the PowerPoint presentation may constitute a

| 703 | D-PRIV 003752 - D-PRIV 003755 | This document contains privileged and non-privileged information. Defendants shall produce this document with appropriate redactions only to the contents of the top email sent on January 22, 2021, at 9:49:30 a.m. |
| 704 | D-PRIV 003756 - D-PRIV 003760 | This document contains privileged and non-privileged information. Defendants shall produce this document with appropriate redactions only to the contents of the top two emails sent on January 25, 2021, at 9:20:36 a.m., and January 22, 2021, at 9:49 a.m. |
| 705 | D-PRIV 003761 - D-PRIV 003765 | This document contains privileged and non-privileged information. Defendants shall produce this document with appropriate redactions only to the contents of the top three emails sent on January 25, 2021, at 9:21:55 a.m., January 25, 2021, at 9:21 a.m., and January 22, 2021, at 9:49 a.m. |
| 706 | D-PRIV 003766 - D-PRIV 003769 | This document contains privileged and non-privileged information. Defendants shall produce this document with appropriate redactions only to the contents of the top two emails sent on January 22, 2021, at 10:02:39 a.m., and January 22, 2021, at 9:49 a.m. |
| 707 | D-PRIV 003770 - D-PRIV 003774 | This document contains privileged and non-privileged information. Defendants shall produce this document with appropriate redactions only to the contents of the top two emails sent on January 22, 2021, at 10:45:13 a.m., and January 22, 2021, at 9:49 a.m. |
| 728 | D-PRIV 003841 - D-PRIV 003844 | This document does not contain privileged information. Defendants shall produce this document in its entirety. |

combination of facts, which are discoverable, and legal conclusions regarding those facts, which are not discoverable, defendant should produce a redacted version of the PowerPoint presentation to plaintiffs.").

| 729 | D-PRIV 003845 - D-PRIV 003847 | This document contains privileged and non-privileged information. Defendants shall produce this document with appropriate redactions only to the contents of the top email sent on December 15, 2020, at 11:50:42 a.m. |
| 734 | D-PRIV 003858 - D-PRIV 003860 | This document is privileged. Defendants need not produce this document to Plaintiff. |
| 735 | D-PRIV 003861 - D-PRIV 003862 | This document does not contain privileged information. Defendants shall produce this document in its entirety. |
| 740 | D-PRIV 003883 - D-PRIV 003885 | This document contains privileged and non-privileged information. Defendants shall produce this document with appropriate redactions only to the contents of the top two emails sent on December 15, 2020, at 4:57:08 p.m., and December 15, 2020, at 4:47 p.m. |
| 757 | D-PRIV 003957 - D-PRIV 003958 | This document contains privileged and non-privileged information. Defendants shall produce this document with appropriate redactions only to the contents of the top email sent on December 15, 2020, at 4:46:42 p.m. |
| 760 | D-PRIV 003964 | This document is privileged. Defendants need not produce this document to Plaintiff. |
| 840 | D-PRIV 004147 | This document is privileged. Defendants need not produce this document to Plaintiff. |
| 841 | D-PRIV 004148 - D-PRIV 004149 | This document is privileged. Defendants need not produce this document to Plaintiff. |

D.    Other Related Matters

Notwithstanding the foregoing determinations, the Court must address certain misconceptions raised by the parties' respective briefs concerning the permissible scope of discovery. Plaintiff complains that Defendants are shielding relevant, non-privileged information

concerning Defendants' decisions to deny Plaintiff's second accommodation request and terminate her employment. As a Court in this District previously stated in an action challenging an employment termination decision on discrimination and retaliation grounds, "[i]t is critical … for Plaintiff to be able to ascertain who made the recommendation to terminate and what that recommendation was based on." *Graham*, 2022 WL 522811, at *1, 5.

In *Graham*, the Honorable Lois H. Goodman, U.S.M.J., considered a motion to compel documents withheld by the County of Monmouth based on the attorney-client privilege "aris[ing] out of Plaintiff's efforts to determine who within the County recommended Plaintiff's termination and the events which led to that course of action." *Id.* at *1-2. Despite holding that the documents at issue were privileged, Judge Goodman found that none of the following information is privileged: (i) "the identities of the individuals who took part in the process"—*i.e.*, those "[w]ho participated in and/or contributed to the process"—"which led to the termination recommendation"; and (ii) "the facts considered by the decision-makers or referred to in the process," excluding "any legal opinions of counsel." *Id.* at *5-6 (internal citations omitted).[17]

---

[17] Notably, before the filing of the motion to compel in *Graham*, Judge Goodman had already directed the County to produce its outside counsel for a deposition based on in-house counsel's deposition testimony that identified outside counsel "as being involved in the decision to terminate." 2022 WL 522811, at *1 (citing April 6, 2021 Order, Civ. No. 19-18763, D.E. 46 (stating "a central issue in any discrimination [or retaliation] case is who made the decision that is being challenged," and that "[g]iven that intent is a part of the analysis, a plaintiff must be allowed to explore the identities of the decision makers and their bases for the decisions at issue")). Judge Goodman issued that directive with the following limitations:

> Questions are to relate to [outside counsel's] role in the decisions at issue ... insofar as he served as a participant, not as one giving legal advice. If he participated in any way other than as an attorney giving legal advice, he must answer the questions fully. …

> … If any question is objected to based on the assertion of attorney-client privilege, [outside counsel] is ordered to answer sufficiently to allow the Court and Plaintiff to make a determination as to whether in fact the communication at issue was privileged. In this regard, the assertion of privilege must be clear and unambiguous. It must state that there was a protected communication and identify all parties to that communication, as well as a brief description of the subject matter …. [Civ. No. 19-18763, D.E. 46 at 2-3].

The Court finds *Graham* analogous to this matter and adopts its approach and conclusions. Accordingly, to the extent Defendants have withheld any such relevant, non-privileged information, they shall promptly produce it. Additionally, the Court cautions the parties about deviating from these findings while, at any future deposition, directing witnesses to not answer questions calling for such information, based on the attorney-client privilege.[18]

E.   Defendants' Application to Seal

Finally, the Court addresses Defendants' application "for leave to file their Opposition to Plaintiff's Motion to Compel Discovery from Defendants under seal," which the Court construes as a motion to seal information referenced in their opposition about Plaintiff's medical documentation. [D.E. 97]. Despite disagreeing with Plaintiff's confidentiality designation, Defendants seek this relief "out of an abundance of caution." [*Id.* ¶¶ 10, 12]. Plaintiff has not joined or opposed Defendants' sealing application.

Although there exists in civil cases a common law public right of access to judicial proceedings and records, the right of public access is not absolute, and the presumption of public access is rebuttable. *See In re Cendant Corp.*, 260 F.3d 183, 192, 194 (3d Cir. 2001). In this District, the party seeking to seal part of the judicial record bears the burden of demonstrating that "'good cause' exists to overcome the presumption in favor of public access." *China Falcon Flying Ltd. v. Dassault Falcon Jet Corp.*, Civ. No. 15-6210, 2017 WL 3718108, at *2 (D.N.J. Aug. 29, 2017) (citation omitted). The moving party must make a "particularized showing that disclosure will cause a 'clearly defined and serious injury to the party seeking closure.'"

---

[18] In this Opinion the Court does not address or resolve any specific deposition dispute, including the question of whether Plaintiff may still seek to compel or take Weissert's deposition. Those issues are not before the Court. If any such disputes remain unresolved, they shall be promptly brought to the Court's attention in accordance with the directives herein, and the Court's Scheduling and Case Management Orders.

*Securimetrics, Inc. v. Iridian Techs., Inc.*, Civ. No. 03-04394, 2006 WL 827889, at *2 (D.N.J. Mar. 30, 2006) (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)). However, a narrow exception to the presumption of public access has been carved out for discovery materials as well as "discovery motions and their supporting documents." *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157, 165 (3d Cir. 1993).

In light of the nature of the motion, and the fact that there is no opposition to the application, the Court finds good cause to seal the portions of the Defendants' opposition containing Plaintiff's medical information. Any other information shall not be sealed.

## V.    CONCLUSION AND ORDER

For the foregoing reasons, **IT IS** on this 28th day of July, 2023, **ORDERED** that:

1.    Plaintiff's motion to compel is **GRANTED IN PART** and **DENIED IN PART**. No later than fourteen days from the date of this Order, Defendants shall produce documents consistent with the conclusions set forth in this Opinion.

2.    Defendants' application to seal their opposition to the motion to compel is **GRANTED IN PART** and **DENIED IN PART**. No later than fourteen days from the date of this Order, Defendants shall file a redacted version of their opposition consistent with this Opinion. The Clerk of Court shall maintain the documents filed at D.E. 97 under seal.

3.    The fact discovery deadline is extended to November 1, 2023, and the expert discovery schedule is amended as follows: (i) affirmative expert reports shall be delivered by December 8, 2023; (ii) responsive expert reports shall be delivered by January 12, 2024; and (iii) expert depositions shall be completed by February 16, 2024. Any unresolved discovery disputes (other than those that arise during depositions) must be brought before the Court no later than August 25, 2023. Due to the age of this matter, further requests to extend the discovery schedule

are discouraged and will not be granted absent extraordinary circumstances and a detailed articulation of good cause, supported by declaration of counsel.

4.      The Court will hold a telephonic status conference on October 3, 2023, at 11:30 a.m., to be joined by dialing 866-434-5269, access code 1874589. At least three business days prior, the parties shall file a joint status letter, not to exceed three pages double-spaced.

5.      The Clerk of Court is directed to terminate the motion at D.E. 95.

                                                 /s/ *André M. Espinosa*
                                                ANDRÉ M. ESPINOSA
                                                United States Magistrate Judge